## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA ZAYAS, DEBORAH JEAN, and SEBE ALGOFI, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Case No. 3:21-cv-01596 |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, and EDGEWELL PERSONAL CARE, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiffs Lisa Zayas, Deborah Jean, and Sebe Algofi (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this action and file this amended complaint against Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, and Edgewell Personal Care, LLC (collectively, "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Defendants distribute, market, and sell several over-the-counter sunscreen products under their brand name "Banana Boat."

2.      Defendants' Banana Boat sunscreen products were advertised to consumers and represented as safe and as not actually or potentially being contaminated or adulterated with other substances.

3.      But Defendants' Banana Boat sunscreen products were not safe: several of Defendants' Banana Boat sunscreen products have been independently tested and shown to be adulterated with benzene, a known human carcinogen.  The presence of benzene in Defendants' Banana Boat sunscreen products was not disclosed in the products' label, in violation of state and federal law.  Despite this, Defendants continued to tout the sunscreen products' safety and conceal their risks.

4.      The benzene contamination of the Sunscreen Products – which are marketed, in part, as being preventative of certain cancers (e.g. skin cancer) – renders them unsafe for their intended use, and therefore, both worthless and harmful due to the inclusion of a known human carcinogen.

5.      Because Plaintiffs purchased worthless products, they have suffered an economic loss so that the makers of Banana Boat sunscreen products could reap ill-gotten profits.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this controversy under 28 U.S.C. §1332(d) as this case alleges a class action claim in which the matter in controversy exceeds $5,000,000 and most of the class members are citizens of a state different from the citizenship of the Defendants.

7.      This Court has personal jurisdiction over Defendants because Defendants maintain their principal place of business in this District, have conducted systematic and continuous business activities in and throughout the State of Connecticut, including in this District, and/or have caused their products to be disseminated in this District.

8.      Venue in this district is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants reside in this District.

## PARTIES

9.      Plaintiff Lisa Zayas is a resident and citizen of Philadelphia, Pennsylvania.  Most recently in 2021, and several years prior to, Plaintiff Zayas purchased Banana Boat brand sunscreen products, from either CVS, Marshall's, Walgreens, and/or Walmart for herself and members of her family.

10.      Plaintiff Deborah Jean is a resident and citizen of Salem, Oregon.  In approximately 2019, and multiple times throughout that year, Plaintiff Jean purchased Banana Boat brand sunscreen products from Walgreens for herself and her daughter.

11.      Plaintiff Sebe Algofi resides in Brooklyn, New York.  In 2020, Plaintiff purchased Banana Boat sunscreen products from Target for her children.

12.      Defendant Edgewell Personal Care Company is a foreign business corporation with its principal place of business in Shelton, Connecticut.  Edgewell Personal Care Company is licensed to and does business throughout the United States.  Edgewell Personal Care Company manufactures, distributes, markets, and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide.

13.      Defendant Edgewell Personal Care Brands, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut.  Edgewell Personal Care Brands, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company.  Edgewell Personal Care Brands, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide.

3

14.     Defendant Edgewell Personal Care, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Shelton, Connecticut. Edgewell Personal Care, LLC is a wholly-owned subsidiary of Edgewell Personal Care Company. Edgewell Personal Care, LLC manufactures, distributes, markets and/or sells personal care products, including Banana Boat sunscreen products, to consumers nationwide.

15.     All three "Edgewell" Defendants will be referred to collectively, hereinafter, as "Edgewell."  At all relevant times, each and every Edgewell Defendant was acting as an agent and/or employee of each of the other Edgewell Defendants with respect to the manufacturing, marketing, selling and/or distributing of Banana Boat sunscreen products, and was the owner, agent, servant, joint-venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Edgewell Defendants.  On information and belief, each of the acts and/or omissions complained of herein were made known to, and ratified by, each of the other Edgewell Defendants.

16.     Upon information and belief, the planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Products and the claims alleged herein was primarily carried out at Edgewell's headquarters and facilities within Connecticut, as is most, or all, of the Products' manufacturing and assembly.

## FACTUAL ALLEGATIONS

### Benzene is a known human carcinogen.

17.     Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline.  The major source of benzene in the United States is petroleum.  The health hazards of

benzene have been recognized for over one hundred years.  According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[1]  Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC").[2]  Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[3]  As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on **sufficient evidence** of carcinogenicity in humans, **sufficient evidence** of carcinogenicity in experimental animals, and **strong** mechanistic evidence. . . .  The Working Group affirmed the *strong evidence* that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans.  In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[4]

18.     Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[5] and classifies benzene as a "Class 1" solvent that should be "avoided."[6]  FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the

---

[1] *Benzene,* Report on Carcinogens, Fourteenth Edition, DEPT. OF HEALTH AND HUMAN SERVICES (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf (emphasis in original).

[2] *Benzene*, IARC MONOGRAPHS ON THE EVALUATION OF CARCINOGENIC RISKS TO HUMANS, Volume 120 (2018), https://publications.iarc.fr/_publications/media/download/6043/20a78ade14e86cf076c3981a9a094f45da6d27cc.pdf.

[3] *Id.*

[4] *Id.* (emphasis in original).

[5] *Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages*, FOOD AND DRUG ADMIN., https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1 (last visited on Nov. 24, 2021).

[6] *Q3C – Tables and List*, FOOD AND DRUG ADMIN., https://www.fda.gov/media/71737/download (last visited on Nov. 24, 2021).

manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[7]

**_Testing confirms Defendants' Sunscreen Products contain benzene._**

19.    Defendants manufacture, market, advertise, label, distribute, and/or sell a variety of Banana Boat sunscreen spray/aerosol products and lotions, including[8]:

| 1  | Banana Boat | Spray  | Deep Tanning Dry Oil Clear Sunscreen Spray SPF 4 |
|----|-------------|--------|---------------------------------------------------|
| 2  | Banana Boat | Spray  | Kids Max Protect & Play Sunscreen C-Spray SPF 100 |
| 3  | Banana Boat | Lotion | Kids Mineral Based Sunscreen Lotion SPF 50+ |
| 4  | Banana Boat | Spray  | Kids Sport Sunscreen Lotion Spray SPF 50 |
| 5  | Banana Boat | Spray  | Protective Dry Oil Clear Sunscreen Spray with Coconut Oil FPS 15 |
| 6  | Banana Boat | Spray  | Simply Protect Kids Sunscreen Spray SPF 50+ |
| 7  | Banana Boat | Spray  | Simply Protect Sensitive Mineral Enriched Sunscreen Lotion Spray SPF 50 |
| 8  | Banana Boat | Spray  | Ultra Defense Ultra Mist Clear Sunscreen Spray SPF 100 |
| 9  | Banana Boat | Spray  | Ultra Sport Clear Sunscreen Spray SPF 100 |
| 10 | Banana Boat | Lotion | Ultra Sport Sunscreen Lotion SPF 100 |
| 11 | Banana Boat | Spray  | Ultra Sport Clear Sunscreen Spray SPF 30 |
| 12 | Banana Boat | Spray  | Ultra Sport Clear Sunscreen Spray SPF 50 |

20.    In 2020, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendants' Sunscreen Products.  Specifically, Valisure tested numerous lots of Defendants' spray and lotion Sunscreen Products.  Through its testing, Valisure discovered that certain of the Sunscreen Products contain benzene, with values ranging from less than 0.10 parts per million ("ppm"), and values ranging from 0.10 ppm to 0.43 ppm.  For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective

---

[7] _Guidance for Industry - Q3C Impurities: Residual Solvents_, FOOD AND DRUG ADMIN., https://www.fda.gov/media/71736/download (last visited on Nov. 24, 2021).

[8] The twelve products listed in this chart are hereafter collectively referred to in the Complaint as the "Sunscreen Products." Discovery may reveal additional Sunscreen Products manufactured, sold, and distributed by Defendants that are implicated by this action, and Plaintiffs reserve their right to include any such products in this action.

equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.10 ppm and defines "skin absorption" as an exposure route.[9]

21.     In addition, since the Valisure sunscreen testing was made public and showed Defendants' Sunscreen Products containing benzene values as high as 0.43 ppm, Plaintiffs retained an independent third-party lab to retest the benzene levels in Defendants' Sunscreen Products. That testing also confirmed that certain of the Banana Boat Sunscreen Products are contaminated with benzene in unacceptable levels, including tests that showed levels between 1.99 ppm and 2.20 ppm, numbers that are far higher than those levels found by the Valisure testing.

22.     Benzene is not listed as an active or inactive ingredient on any of the labels of Defendants' Sunscreen Products.  Moreover, all of the Sunscreen Products are marketed and advertised in an identical manner – as "Sunscreen."

23.     On May 25, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendants' Sunscreen Products that (as tested) contained 0.1 ppm or more of benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. §351 and 21 U.S.C. §352, respectively.[10]  As of this filing, the FDA has not responded to Valisure's citizen petition, and Defendants have not taken any action to remove the Sunscreen Products from the market.

**Sunscreen contaminated with benzene cannot be "safe" under the FDA.**

---

[9] *NIOSH Pocket Guide to Chemical Hazards - Benzene*, THE NATIONAL INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH (NIOSH), https://www.cdc.gov/niosh/npg/npgd0049.html (last visited Nov. 24, 2021).

[10] Letter from Valisure, LLC to the Food and Drug Administration, re: Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care Products (May 24, 2021) (https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf/)

24. The FDA regulates sunscreens to ensure they meet safety and effectiveness standards.[11] The FDA also regulates sunscreens, including the Sunscreen Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. As an FDA-regulated product, sunscreens must pass certain tests before they are sold. As noted on FDA's website,

> Every drug has active ingredients and inactive ingredients. In the case of sunscreen, active ingredients are the ones that are protecting your skin from the sun's harmful UV rays. Inactive ingredients are all other ingredients that are not active ingredients, such as water or oil that may be used in formulating sunscreens.[12]

25. Per the FDA regulations governing Defendants' Sunscreen Products, titled "Sunscreen Drug Products for Over-the-Counter Human Use,"[13] there are certain acceptable active ingredients in products that are labeled as sunscreen.[14] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for any sunscreen products, regardless of manufacturer. Nor is benzene identified as an active or inactive ingredient on the labels of any of the Defendants' Sunscreen Products. Thus, Defendants' assurances in their marketing of their Sunscreen Products – *e.g.*, that "[t]his product is safe for its intended use based on the formulation, testing results, and the long history of safe consumer use" – are false and misleading.[15]

26. The governing regulations provide: "An over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not

---

[11] *See generally* 21 C.F.R. §§352.1– 352.77.

[12] *Sunscreen: How to Help Protect Your Skin from the Sun,* FOOD AND DRUG ADMIN., https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun (last visited on Nov. 24, 2021).

[13] 21 C.F.R. §352.10.

[14] *Supra* note 11.

[15] *Safety Data Sheet*, EDGEWELL PERSONAL CARE, LLC, (June 3, 2015). https://edgewell.com/wp-content/uploads/2016/08/92014320-BB-Dry-Oil-Spray-SPF-4.pdf (last visited on Nov. 24, 2021).

misbranded if it meets each condition in this part and each general condition established in §330.1 of this chapter."[16]  Defendants failed to meet this standard as described herein.

### *Defendants did not disclose the possibility of benzene exposure.*

27.     Because Defendants did not disclose that benzene, a known human carcinogen, may be present in the Sunscreen Products purchased by Plaintiffs and the putative Class members, the Sunscreen Products are adulterated and misbranded.  As noted by the World Health Organization, there is no "no safe level of [benzene] exposure," so it is unsuitable for human application as an ingredient in sunscreen.[17]

28.     Defendants wrongfully advertised and sold the Sunscreen Products without any labeling or disclosure to indicate to consumers that these products may contain benzene.  The following image shows an example of the "Ultra Sport Clear Sunscreen Spray SPF 100", which is representative of the lack of disclosure of benzene on all of the other at-issue Sunscreen Products:

---

[16]     21 C.F.R. §352.1(a).

[17]     *Exposure to Benzene: A Major Public Health Concern*, WORLD HEALTH ORG., (2010), *https*://www.who.int/ipcs/features/benzene.pdf (last visited on Nov. 24, 2021).



**Active Ingredients**
Avobenzone 3.0%, Homosalate 10.0%, Octisalate 5.0%, Octocrylene 10.0%, Oxybenzone 6.0%

**Inactive ingredients:** Alcohol Denat., Isobutane, VA/Butyl Maleate/Isobornyl Acrylate Copolymer, Caprylyl Glycol, Cyclopentasiloxane, Cyclohexasiloxane, Fragrance, Polyglyceryl-3 Stearate/Isostearate/Dimer Dilinoleate Crosspolymer, Lauryl PEG-8 Dimethicone, Phenylisopropyl Dimethicone, Ascorbyl Palmitate, Methyl Dihydroabietate, Tocopheryl Acetate, Mineral Oil, Panthenol, Water, Aloe Barbadensis Leaf Extract.

29.    Defendants' failure to control for benzene contamination, their continued advertisement of their Sunscreen Products as "safe" without any disclosure of the contamination of benzene, and their continued sale of their adulterated products, constitutes actionable fraud.

30.    Plaintiffs have standing to represent members of the putative Classes because there is sufficient similarity between the specific products purchased by the Plaintiffs and the other Sunscreen Products not purchased by the Plaintiffs.   Specifically, each and every one of the Sunscreen Products (i) are marketed in substantially the same way – as "Sunscreen" – and (ii) fail to include labeling indicating to consumers that the Sunscreen Products may contain benzene as an active or inactive ingredient.   Accordingly, the misleading effect of all of the Sunscreen Products' labels are substantially the same.

31.     Plaintiffs and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain harmful levels of benzene, and Defendants have failed to warn consumers of this fact. Such illegally sold products are worthless and have no value.

32.     Plaintiffs and Class members bargained for a sunscreen product free of contaminants and dangerous substances and were deprived the basis of their bargain when Defendants sold them a sunscreen product containing the dangerous substance benzene, which rendered the Products unmerchantable and unfit for use.

33.     As the Products expose consumers to benzene well above the legal limit, the Products are not fit for use by humans.  Plaintiffs are further entitled to damages for the injury sustained in being exposed to high levels of acutely toxic benzene, damages related to Defendants' conduct, and injunctive relief.

34.     Plaintiffs seek to recover damages because the Products are adulterated, defective, worthless, and unfit for human use due to the presence of benzene, a carcinogenic and toxic chemical impurity.

35.     Plaintiffs and the putative Class suffered economic damages due to Defendants' misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the sunscreen product(s) they purchased.  Plaintiffs allege the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief.  Plaintiffs further believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

36.     Plaintiffs bring this action on behalf of themselves and the Classes for equitable relief and to recover damages and restitution for: violation of the consumer protection statutes invoked herein; fraudulent concealment; and unjust enrichment.

*Defendants' marketing and sale of the Sunscreen Products violates federal law.*

37.     Section 5(a) of the Federal Trade Commission ("FTC") Act, 15 U.S.C. §45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

38.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

39.     Section 12 of the FTC Act, 15 U.S.C. §52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.  For the purposes of Section 12 of the FTC Act, 15 U.S.C. §52, the Products are either "foods" or "drugs" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. §§55(b) and (c).  Under these provisions, companies must have a reasonable basis for making objective product claims.

40.     As alleged herein, Defendants have represented that the ingredients in their sunscreen Products are safe, effective, and are not adulterated with benzene.  However, these representations are false, deceptive, and misleading as the Products actually contain dangerous levels of benzene.  The making of such misrepresentations by Defendants constitutes a deceptive act or practice and the making of false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§45(a) and 52.

*Plaintiffs each purchased a Sunscreen Product without a benzene contamination disclosure.*

**Plaintiff Zayas**

41.     Plaintiff Zayas purchased numerous Banana Boat Sunscreen Products, from various stores – including CVS, Marshall's, Walgreens, and/or Walmart brick-and-mortar stores in the Philadelphia, Pennsylvania area for herself and members of her family.

42.     She purchased the Product for the purpose of protecting against the sun's harmful rays, including against the risk of skin cancer. She therefore purchased the Product with the assumption that it was free of benzene, a carcinogen.

43.     When Plaintiff Zayas made her purchase(s), there was no disclosure on the label (in the ingredients list or otherwise) that the Product contained benzene or may have contained benzene.

44.     In the course of her purchase(s), Plaintiff Zayas was unaware that the Product she was buying either contained or had the risk of containing benzene, or that it was possible contaminated with benzene. Plaintiff Zayas does not want to be exposed to benzene or risk being exposed to benzene. Had she known that any amount of benzene was or risked being contained in the Product she purchased, she would have purchased a different sunscreen that did not have the risk of containing benzene.

**Plaintiff Jean**

45.     Plaintiff Jean purchased numerous Banana Boat Sunscreen Products from a Walgreens brick-and-mortar store in Salem, Oregon for herself and her daughter on multiple occasions in 2019.

46.     She purchased the Product for the purpose of protecting against the sun's harmful rays, including against the risk of skin cancer. She therefore purchased the Product with the assumption that it was free of benzene, a carcinogen.

47.     When Plaintiff Jean made her purchase(s), there was no disclosure on the label (in the ingredients list or otherwise) that the Product contained benzene or may have contained benzene.

48.     In the course of her purchase(s), Plaintiff Jean was unaware that the Product she was buying either contained or had the risk of containing benzene, or that it was possible contaminated with benzene. Plaintiff Jean does not want to be exposed to benzene or risk being exposed to benzene. Had she known that any amount of benzene was or risked being contained in the Product she purchased, she would have purchased a different sunscreen that did not have the risk of containing benzene.

**Plaintiff Algofi**

49.     Plaintiff Algofi purchased numerous Banana Boat Sunscreen Products for her children in at a brick-and-mortar Target store in and around Brooklyn, New York in 2020.

50.     She purchased the Product for the purpose of protecting against the sun's harmful rays, including against the risk of skin cancer. She therefore purchased the Product with the assumption that it was free of benzene, a carcinogen.

51.     When Plaintiff Algofi made her purchase(s), there was no disclosure on the label (in the ingredients list or otherwise) that the Product contained benzene or may have contained benzene.

52.     In the course of her purchase(s), Plaintiff Algofi was unaware that the Product she was buying either contained or had the risk of containing benzene, or that it was possible

contaminated with benzene. Plaintiff Algofi does not want to be exposed to benzene or risk being exposed to benzene. Had she known that any amount of benzene was or risked being contained in the Product she purchased, she would have purchased a different sunscreen that did not have the risk of containing benzene.

## CLASS ACTION ALLEGATIONS

53.   Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23 on their own behalf and as the Class representatives on behalf of the following:

**Nationwide Class:** All persons within the United States who purchased the Products within the applicable statute of limitations.

**Pennsylvania Sub-Class:** All persons within the Commonwealth of Pennsylvania who purchased the Products within the applicable statute of limitations.

**Oregon Sub-Class:** All persons within the State of Oregon who purchased the Products within the applicable statute of limitations.

**New York Sub-Class**: All persons within the State of New York who purchased the Products within the applicable statute of limitations.

54.   The Nationwide Class, Pennsylvania Sub-Class, Oregon Sub-Class, and New York Sub-Class shall collectively be referred to herein as the "Classes."

55.   Plaintiffs reserve the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

56.   Excluded from the Classes are governmental entities, Defendants, Defendants' officers, directors, affiliates, legal representatives, and employees.

57.   This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

58.   **Numerosity** – Federal Rule of Civil Procedure 23(a)(1).  This Class numbers at least in the thousands of persons.  As a result, joinder of all Class members in a single action is

impracticable.  Class members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

59.     **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).  There are questions of fact and law common to the Classes that, under Connecticut law, predominate over any question affecting only individual members.  Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a.      whether Defendants' advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendants;

b.      whether Defendants made representations regarding the safety of their products;

c.      whether Defendants omitted material information regarding the safety of their products;

d.      whether Defendants' Banana Boat Sunscreen Products were merchantable;

e.      whether Defendants violated the consumer protection statutes invoked herein;

f.      whether Defendants' conduct alleged herein was fraudulent; and

g.      whether Defendants were unjustly enriched by sales of their Banana Boat Sunscreen Products.

60.     The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendants' Banana Boat Sunscreen Products throughout the United States, including Connecticut, and a class action is superior with respect to

considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

61.    **Typicality** – Federal Rule of Civil Procedure 23(a)(3).  Plaintiffs' claims are typical of those of the Class in that the Class members uniformly purchased Defendants' Banana Boat Sunscreen Products and were subjected to Defendants' uniform merchandising materials and representations at the time of purchase.

62.    **Superiority** – Federal Rule of Civil Procedure 23(b)(3).  A class action is the appropriate method for the fair and efficient adjudication of this controversy.  The presentation of separate actions by individual Class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.  In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

63.    **Adequacy** – Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs are adequate representatives of the Classes because they are members of the Class and their interests do not conflict with the interests of the Classes that they seek to represent.  The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

64.    **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, members of the Classes would continue to suffer the harm

described herein, for which they would have no remedy.  Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.  The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

65.     **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.  In particular, Plaintiffs seek to certify a Class to enjoin Defendants from selling or otherwise distributing the Products as labeled until such time that Defendants can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended.

66.     Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendants;

b.     The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the

adjudications, or substantially impair or impede their ability to protect their interests; and/or

      c.    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I

**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
(On Behalf of the Pennsylvania Sub-Class)**

67.    Plaintiff Zayas incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

68.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL"), 73 PA. CONS. STAT. §§201-1, *et seq*., prohibits the use of unfair or deceptive acts or practices in the conduct of trade or commerce. The Pennsylvania CPL is to be liberally construed to effectuate its purpose.

69.    Plaintiff Zayas, and other members of the Pennsylvania Sub-Class, as purchasers of the Products, are consumers within the meaning of the Pennsylvania CPL given that Defendants' business activities involve trade or commerce, are addressed to the market generally, and otherwise implicate consumer protection concerns.

70.    Defendants' conduct in misrepresenting the benefits of their Products and/or omitting material information from the Products' labels constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendants' trade or commerce.

71.     Defendants also knowingly concealed, suppressed, and consciously omitted material facts to Plaintiffs, and other members of the Pennsylvania Sub-Class, knowing that consumers would rely on the advertisements, packaging, and Defendants' uniform representations to purchase the Products.

72.     Once the defect in the Products and its tendency to cause cancer in humans became apparent to Defendants, consumers (Plaintiff Zayas and other members of the putative Pennsylvania Sub-Class) were entitled to disclosure of that fact because a significant risk of Defendants' Banana Boat Sunscreen Products potentially being adulterated with and containing harmful levels of benzene, a human carcinogen, would be a material fact in a consumer's decision-making process, and, without Defendants' disclosure, consumers would not necessarily know that there is such a risk.

73.     Defendants intended that Plaintiff Zayas, and the Pennsylvania Sub-Class, would rely on the continued deception by purchasing the Products, unaware of the material facts and omissions described above.  Defendants knew that their customers would continue to rely on their representations that the ingredients in its sunscreen Products were safe, effective, and were not adulterated with benzene, and knew that consumers would continue to rely upon its silence as to any known risk of the presence of a carcinogenic and toxic chemical impurity, as evidence that the Products were safe.   This conduct constitutes consumer fraud within the meaning of the Pennsylvania CPL.

74.     Defendants' material non-disclosure set forth above constitutes an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods, in violation of the Pennsylvania CPL.

75.     Plaintiff Zayas and other members of the Pennsylvania Sub-Class justifiably relied on the omission of any disclosure related to the contamination of benzene in their purchase of a Product that was "safe" and presumably free from carcinogens.

76.     Plaintiff Zayas, and the other members of the Pennsylvania Sub-Class, suffered damages as a proximate result of the unfair acts or practices of Defendants alleged herein. Defendants' misrepresentations and/or omissions of material fact were done knowingly, intentionally, willfully, or with reckless disregard for the consequences of their actions.

77.     Plaintiff Zayas, and other members of the Pennsylvania Class, would not have purchased the Products but for the promised benefits and concealment of any risk of harm because the Products as sold had no intrinsic value to them. This constitutes an ascertainable loss readily obtainable by the purchase price of the Product.

78.     Defendants knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the Products.

79.     As a proximate result of the above-described violations of the Pennsylvania CPL, Plaintiff Zayas, and other members of the Pennsylvania Sub-Class: (a) purchased and used the Products when they would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchasing the Products; and (c) suffered and/or will suffer additional economic losses by purchasing the Products.

80.     Defendants' conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

81.     Plaintiff Zayas also seeks to enjoin Defendants' ongoing deceptive practices relating to their claims on the Products' labels and advertising.

## COUNT II

**Violations of the Oregon Unlawful Trade Practices Act**
**OR. REV. STAT. §646.607, *et seq*. ("OUTPA")**
**(On Behalf of the Oregon Sub-Class)**

82.     Plaintiff Jean incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

83.     Defendants are engaged in a "trade" and "commerce" within the meaning of OR. REV. STAT. §646.605(8).

84.     Defendants are a "person" within the meaning of OR. REV. STAT. §§646.605(4), 646.607, and 646.608.

85.     Plaintiff Jean and each and every Oregon Sub-Class members' purchase of Defendants' Banana Boat Sunscreen Products constitutes a "sale" within the meaning of OR. REV. STAT. §646.607.

86.     Defendants have advertised within the meaning of OR. REV. STAT. §646.608.

87.     The acts and practices of Defendants as described herein were intended to result in the sale of their Banana Boat Sunscreen Products to Plaintiff Jean and Oregon Sub-Class members.

88.     Defendants have engaged in unconscionable tactics, false advertising, deceptive practices, unlawful methods of competition, and/or unfair acts as defined in the OUTPA, including the material omission that the Products contain benzene to the detriment of Plaintiff Jean and Oregon Sub-Class members. Defendants' unconscionable tactics and deceptive practices have been intentionally, knowingly, and unlawfully perpetrated upon Plaintiff Jean and Oregon Sub-Class members.

89.     Specifically, under Section 646.608, Defendants have violated the following provisions of the OUTPA:

(1)(e): Represents that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have;

(1)(g): Represents that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another;

(1)(i): Advertises real estate, goods or services with intent not to provide the real estate, goods or services as advertised; and

(1)(u): Engages in any other unfair or deceptive conduct in trade or commerce.

90.    Defendants' unfair or deceptive acts and/or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff Jean and members of the Oregon Sub-Class, about the quality and true value of the misrepresented Sunscreen Products.

91.    Defendants intentionally and knowingly misrepresented, concealed, or omitted material facts regarding the Products' benefits and composition.

92.    Defendants owed Plaintiff Jean, and the Oregon Sub-Class, a duty to disclose the true nature of the Products' and their ingredients because they possessed exclusive knowledge of it; intentionally concealed the fact that the Products contained high levels of benzene; and/or made incomplete, false or misleading representations about the Products while purposefully withholding material facts from Plaintiff Jean, and the Oregon Sub-Class, that contradicted these representations.

93.     Defendants' deceptive and unfair actions alleged herein were reckless and undertaken by Defendants knowingly.

94.     As a result of Defendants' actions, Plaintiff Jean and Oregon Sub-Class members have incurred economic damages, including an ascertainable loss in the cost of purchasing the Products.

95.     Had Plaintiff Jean known about the Products containing high levels of benzene, Plaintiff Jean would not have paid as much for Defendants' Banana Boat Sunscreen Products, or would not have purchased them at all.

96.     Plaintiff Jean further seeks recovery of attorneys' fees, costs of litigation, punitive damages, and other equitable relief as determined by the court.

## COUNT III

**Violation of the New York General Business Law §349, *et seq*.**
**(On Behalf of the New York Sub-Class)**

97.     Plaintiff Algofi incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

98.     Plaintiff Algofi brings this claim on behalf of the New York Sub-Class for violation of N.Y. GEN. BUS. §349, *et seq*.

99.     Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in [the State of New York]."

100.    Defendants' marketing and advertising of the Products, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Algofi, and the New York Sub-Class, as to the characteristics and value of the Products; specifically, Defendants omitted the presence or contamination of benzene in the composition of their products, and this omission

reinforced a representation of the Products as "safe" as interpreted by consumers lacking a disclosure otherwise.

101.    Subsection (h) of §349 grants private plaintiffs a right of action, as follows:

In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

102.    In accordance with N.Y. GEN. BUS. §349(h), Plaintiff Algofi seeks an order enjoining Defendants from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining these types of practices in the future, Plaintiff Algofi, and other members of the New York Sub-Class, will continue to suffer harm.

103.    As a consequence of Defendants' deceptive acts and practices, Plaintiff Algofi, and other members of the New York Sub-Class, suffered an ascertainable loss of monies.  By reason of the foregoing, Plaintiff Algofi, and other members of the New York Sub-Class, also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages.

## COUNT IV

### Violation of New York General Business Law §350, *et seq*.
### (On Behalf of the New York Sub-Class)

104.    Plaintiff Algofi incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

105.    Plaintiff Algofi brings this claim on behalf of the New York Sub-Class for violation of N.Y. GEN. BUS. §350, *et seq*.

106.     Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]."  N.Y. GEN. BUS. §350.

107.     Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."  N.Y. GEN. BUS. §350-a(1).  The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates."  *Id.*

108.     Defendants' labeling, marketing, and advertising of the Products, as alleged herein, as "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the Products as being safe and fail to inform consumers of the risk that the Products are contaminated with benzene.

109.     Plaintiff Algofi seeks an order enjoining Defendants from continuing this false advertising.  Absent enjoining this false advertising, Defendants will continue to mislead Plaintiff Algofi, and the other members of the New York Sub-Class, as to the characteristics of the Products and, in doing so, irreparably harm each of the New York Sub-Class members.

110.     As a direct and proximate result of Defendants' violation of New York General Business Law §350, Plaintiff Algofi, and the other members of the New York Sub-Class, have also suffered an ascertainable loss of monies.  By reason of the foregoing, Plaintiff Algofi, and other members of the New York Sub-Class, also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages.  N.Y. GEN. BUS. §350-e.

## COUNT V

### Fraudulent Concealment
### (On Behalf of the Nationwide Class, or
### Alternatively, Pennsylvania, New York, and/or Oregon Subclasses)

111.    Plaintiffs incorporate, by reference, all of the foregoing paragraphs of this Complaint as if fully stated herein.

112.    Plaintiffs bring this claim against Defendants, on behalf of themselves and the other members of the Nationwide Class, and, alternatively, the individual State subclasses pled in Paragraph 38 (the "Classes").

113.    Defendants had a duty to disclose material facts to Plaintiffs and the Classes given their relationship as contracting parties and intended users of the Products.  Defendants also had a duty to disclose material facts to Plaintiffs and the Classes, namely that they were in fact manufacturing, distributing, and selling harmful products unfit for human use, because Defendants had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

114.    Defendants possessed knowledge of these material facts.  Since at least mid-2020, numerous recalls put Defendants on notice that adulterated and misbranded products were being investigated for contamination with carcinogens, including benzene. Notably, a number of Defendants' competitors responded to the Valisure testing (which included other manufacturers' products as well as the Banana Boat Sunscreen Products) by issuing voluntary recalls of their sunscreen products.

115.    Further, the use of benzene is avoidable in the manufacture of sunscreens.

116.    During the relevant time period, Plaintiffs and members of the Classes were using the Products without knowing the Products contained dangerous levels of benzene.

117.    Defendants had a duty to disclose these material facts but failed do so.

27

118.     In so failing to disclose these material facts to Plaintiffs and the Classes, Defendants intended to hide from Plaintiffs and the Classes that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

119.     Plaintiffs and the Classes reasonably relied on Defendants' failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendants had they known they contained unsafe levels of benzene.

120.     As a direct and proximate cause of Defendants' fraudulent concealment, Plaintiffs, and the Classes, suffered damages in the amount of monies paid for the defective Products.

121.     As a result of Defendants' willful and malicious conduct, punitive damages are warranted.

## COUNT VI

**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

122.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as though set forth fully herein.

123.     Plaintiffs, and the other members of the Nationwide Class, conferred benefits on Defendants in the form of monies paid to purchase Defendants' defective and worthless Products.

124.     Defendants voluntarily accepted and retained this benefit.

125.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendants to retain the benefit without paying the value thereof.

126.     Defendants received benefits in the form of revenues from purchases of the Products to the detriment of Plaintiffs, and the other members of the Nationwide Class, because

Plaintiffs, and members of the Nationwide Class, purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

127.    Defendants have been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiffs and the other members of the Nationwide Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Products was misleading to consumers, which caused injuries to Plaintiffs, and members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

128.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiffs and members of the Nationwide Class is unjust and inequitable, Defendants must pay restitution to Plaintiffs and members of the Nationwide Class for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and Plaintiffs' attorneys as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the causes of action referenced herein;

C.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: February 22, 2022

**SHUB LAW FIRM LLC**

By:  */s/ Kevin Laukaitis*
Kevin Laukaitis
Jonathan Shub*
**SHUB LAW FIRM LLC**
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile:  (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

Joseph P. Guglielmo (ct27481)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
jguglielmo@scott-scott.com

Erin Green Comite (ct24886)
Anja Rusi (ct30686)
**SCOTT+SCOTT ATTORNEYS**

**AT LAW LLP**
156 S. Main St.
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
ecomite@scott-scott.com
arusi@scott-scott.com

Brandon M. Wise *
**PEIFFER WOLF CARR
KANE & CONWAY, LLP**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Telephone: (314) 833-4825
bwise@peifferwolf.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Telephone: (202) 640-1160
Facsimile:  (202) 429-2294
gklinger@masonllp.com

Gary E. Mason*
David K. Lietz*
**MASON LIETZ & KLINGER LLP**
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Telephone: (202) 640-1160
Facsimile:  (202) 429-2294
gmason@masonllp.com
dlietz@masonllp.com

Tiffany M. Yiatras*
**CONSUMER PROTECTION
LEGAL, LLC**
308 Hutchinson Road
Ellisville, MO 63011-2029
Telephone: (314) 541-0317
tiffany@consumerprotectionlegal.com

Jonathan M. Jagher
**FREED KANNER LONDON
& MILLEN LLC**

923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile:  (224) 632-4521
jjagher@fklmlaw.com


William E. Hoese*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
whoese@kohnswift.com

Katrina Carroll*
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@lcllp.com

*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiffs and the Classes*